UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY MARCUS MAYBERRY, <br><br> Plaintiff, <br><br> v. <br><br> NATE PULLEY, ARAMARK CORPORATION, and GEORGE PAYNE, <br><br> Defendants. | CAUSE NO. 3:23-CV-1023-TLS-APR |

**OPINION AND ORDER**

Timothy Marcus Mayberry, a prisoner without a lawyer, filed a complaint about regularly being served spoiled food when he was incarcerated at Miami Correctional Facility. ECF No. 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

When Mayberry was in Miami's L Housing Unit from November 2021 through April 2022, he alleges that he regularly received spoiled cold cuts and entrees, rotten fruits and vegetables, and moldy bread for lunch and dinner. *See* Compl. at 3, ECF No. 1. During this time, Mayberry alleges he was forced to consume rotten and nutritionally inadequate food, causing him stomach pain, vomiting, digestion issues, and other physical symptoms. For a long period of time, he was able to eat only the cereal from the breakfast meal sack. *Id.* at 4. Sometimes he would go 24 hours without food because what he was served was inedible. *Id.* at 7.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). "[T]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but inmates are entitled to adequate food to meet their nutritional needs. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). In determining whether the denial of food amounts to a constitutional violation, "a court must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834; *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Mayberry plausibly alleges that his nutritional needs were not being met. He states a claim against Nate Pulley, the Aramark supervisor at Westville. He plausibly alleges that Pulley was aware that the food served was inedible, had the power to change it, but did nothing. The same goes for Deputy Warden Payne. Mayberry alleges that at one point when Payne was walking through LHU, he showed Payne the inedible food he had received and complained that he had been receiving unsafe food for an extended period of time. *See* Compl. at 6. But the deputy warden did nothing.

Similarly, Mayberry has plausibly alleged a claim against Aramark under the doctrine announced in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). As a

private company performing the state function of providing food to prisoners, Aramark may be held liable under § 1983 if the corporation had an unconstitutional policy or custom that was the "moving force" behind the constitutional violation. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235-36 (7th Cir. 2021). "In order to succeed on a *Monell* claim, a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal [or corporate] policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal [or corporate] action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020). Municipal or corporate action giving rise to *Monell* liability "may take the form of: (1) an express policy, (2) a widespread practice or custom, or (3) action by one with final policymaking authority." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 617 (7th Cir. 2022). The Seventh Circuit has "not adopted bright-line rules regarding the quantity, quality, or frequency of conduct needed to prove a widespread custom or practice under *Monell*." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). However, "allegations of a few sporadic examples of an improper behavior will not suffice." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (cleaned up). Instead, a plaintiff must allege that "the practice is widespread and that the specific violations complained of were not isolated incidents." *Id.* Thus, at the pleading stage, "a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental [or corporate] custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Here, Mayberry's allegation that the nutritionally inadequate and rotten meals were frequently served over a several-month period is sufficient to create a reasonable inference that

3

Aramark has a "widespread practice" of providing constitutionally inadequate meals to the point that it can be considered a custom or practice attributable to Aramark. For example, he alleges that his food was frequently moldy, strangely discolored, slimy, and otherwise unsafe for human consumption. Compl. ¶¶ 10–12. Mayberry alleges that Aramark was aware of these problems, but that it still failed provided him with safe food. *Id.* ¶ 22; *see Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) ("Inaction, too, can give rise to liability in some instances if it reflects a conscious decision not to take action.") (cleaned up). And Mayberry specifically alleges that "[t]hese ailments were not sporadic or temporary problems, but persisted for a prolonged period of time i.e., from November 2021 through April 2022." *Id.* ¶ 15.[1] Mayberry's allegations create a reasonable inference of a widespread practice so as to constitute a custom of serving inadequate and unsafe food to inmates. *See Gill*, 850 F.3d at 344. Thus, the *Monell* claim survives the Court's § 1915A review.

Mayberry raises other issues with the food service. He blames Warden William Hyatte, specifically, for ordering that LHU prisoners receive three meal-sacks a day, rather than hot meals, for a prolonged period of time. *See* Compl. at 3. Receiving sack meals instead of hot meals does not violate the Constitution. *See Isby v. Brown*, 856 F.3d 508, 522 (7th Cir. 2017) ("Prisoners have a right to adequate food, but not to food that is tasty or even appetizing." (quoting *Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir. 2004)); *see Lunsford v. Bennett*, 17

---

[1] Thus, because Mayberry alleges there was a pervasive and long running practice of serving spoiled food over a series of multiple months, the allegations of this case are distinguishable from cases where an inmate alleges isolated or sporadic violations. *See, e.g.*, *Kaiser v. Tiggs Canteen Servs.*, No. 1:21-CV-131, 2021 WL 1578792, at *1 (N.D. Ind. Apr. 22, 2021) (concluding that inmate did not state a *Monell* claim when he alleged that his food had a rock in it on a single occasion); *Schrock v. Aramark, LLC*, No. 3:19-CV-510, 2020 WL 3302992, at *1 (N.D. Ind. June 18, 2020) (concluding that inmate did not state a *Monell* claim when he alleged that there were two occasions when he found insects in his food). Instead, this case is more akin to *Holleman v. Aramark Corp.*, wherein the plaintiff plausibly alleged that Aramark frequently served watered-down food and frequently provided nutritionally inadequate meals to the plaintiff and other prisoners. No. 1:11-CV-323, 2013 WL 4542875, at *2-3 (S.D. Ind. Aug. 27, 2013).

4

F.3d 1574, 1581 (7th Cir. 1994) ("complaints about cold and poorly-prepared food" do not state an Eighth Amendment claim). He also complains that Hyatte was responsible for LHU prisoners going more than 14 hours between meals, in violation of prison policy. Compl. at 7. This also does not state a claim, as the Constitution does not require a particular meal schedule, as long as the inmate's daily nutritional needs are met. *Williams v. Shah*, 927 F.3d 476, 480-81 (7th Cir. 2019) (approving of "brunch" program where inmates received two meals a day as long as they received enough calories overall). Mayberry alleges these practices violate state law and prison policy. But "the failure of officials to comply with departmental regulations or even state law does not necessarily violate the Constitution." *Courtney v. Butler*, 66 F.4th 1043, 1052 (7th Cir. 2023).

Nor may Mayberry proceed against Warden William Hyatte, Traci Riggle,[2] IDOC Commissioner Christina Reagle, or former IDOC Commissioner Robert Carter based on the spoiled food because there is no basis to reasonably infer that they had knowledge of the problem. Mayberry states that Hyatte, Reagle, and Carter were made aware of the issues with the food based on his repeated requests, grievances, complaints, and notice of tort claims from November 2021 through April 2022. ECF No. 1 at 9-10. But the attached grievances and Notice of Tort Claims complain primarily about the issue with the timing of the food service, not about the quality. *See generally* ECF No. 1-1. As discussed above, the timing of the meals does not

---

[2] Riggle's role in the prison is not defined; her only connection to the allegations here is that she received Mayberry's Notice of Tort Claims. Compl. at 10. If her role in the prison is limited to processing Notice of Tort Claims, then she cannot be held liable for other people's torts. *See French v. Eckstein*, 754 F. App'x 478, 480 (7th Cir. 2019) ("But because the [complaint] examiner 'did not create the peril facing' French in the dumpster 'or do anything that increased the peril, or make it harder for' French to get medical treatment, he did not violate the Eighth Amendment."(quoting *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009)).

5

state a claim, so there are no facts alleged from which the court can infer that any of these defendants had knowledge of the extent of the spoiled food being served to Mayberry.

Mayberry next alleges that on multiple occasions, he verbally complained to Mullat about the food being unsafe to eat, and Mullat told him that it was not his job to make the food or to ensure that Mayberry ate. Compl. at 6. Mullet also responded at various times that Mayberry should not have come to prison, that he should scrape the rotten parts off, and that the moldy food looked "yummy," in a sarcastic manner. Compl. at 6. Mayberry does not describe who Mullat is or what his role in the prison is. There is not enough information to hold him responsible for the problems with the food.

Finally, Mayberry sues Unidentified MCF Nurses, alleging they provided inadequate medical care for the physical symptoms he experienced—namely severe headaches, painful bowel movements, dry mouth, dizziness, weakness, insomnia, body cramps, and substantial weight loss. Compl. at 7. He alleges that one nurse asked him if he was on a medical diet, and when he responded that he wasn't, she told him that she would not help him. *Id.* at 8. Other nurses allegedly ignored his healthcare requests or lied about him already being seen. *Id.* Another nurse allegedly responded to his complaint that he felt like he was dying from not consuming enough food by saying that next time he should think twice about coming to prison and should not expect to be treated as if he were at a hotel. *Id.*

Mayberry's various interactions with these nurses is unrelated to his primary complaint about the quality of the food being served, and therefore the court will not discuss the merits of these claims. "[U]nrelated claims against different defendants belong in different suits[.]" *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Claims are related either if the same defendant is involved in each claim <u>or</u> if the claims all stem from the same transaction or

6

occurrence and there is a common question of law or fact. Fed. R. Civ. P. 18(a), 20(a)(2). Here, the inquiry into whether Mayberry was being provided nutritionally adequate food involves a completely different set of facts than whether these discrete interactions with various nurses were constitutionally adequate. These claims will be dismissed without prejudice, and Mayberry may decide whether he wishes to bring them in a separate lawsuit, subject to the usual constraints of the Prisoner Litigation Reform Act. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (District courts may direct a plaintiff "to file separate complaints, each confined to one group of injuries and defendants.").

## CONCLUSION

For these reasons, the Court:

(1) GRANTS Timothy Marcus Mayberry leave to proceed against Aramark Supervisor Nate Pulley and Deputy Warden George Payne in their individual capacities for monetary damages for deliberate indifference to his right to nutritionally adequate food from November 2021 through April 2022 at Miami Correctional Facility in violation of the Eighth Amendment;

(2) GRANTS Timothy Marcus Mayberry leave to proceed against Aramark Corporation in its official capacity for monetary damages for a policy of providing spoiled and rotten food, resulting in Mayberry receiving inadequate nutrition from November 2021 through April 2022 in violation of the Eighth Amendment;

(3) DISMISSES without prejudice the claims against the Unidentified MCF Nurses;

(4) DISMISSES all other claims;

(5) DISMISSES William Hyatte, Nurses, Christina Reagle, Robert Carter Jr, Mullat, Traci Riggle;

(6) DIRECTS the Clerk of Court, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) George Payne at the Indiana Department of Correction, with a copy of this order and the complaint (ECF No. 1);

(7) DIRECTS the Clerk of Court, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Nate Pulley and Aramark Corporation at Miami Correctional Facility, with a copy of this order and the complaint (ECF No. 1);

(8) ORDERS the Indiana Department of Correction and Aramark Corporation to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(9) ORDERS, under 42 U.S.C. § 1997e(g)(2), Nate Pulley, George Payne, and Aramark Corporation to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on April 2, 2024.

    s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT