UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIMOTHY MARCUS MAYBERRY,

    Plaintiff,

    v.                      CAUSE NO.: 3:23-CV-1023-TLS-APR

NATE PULLEY, et al.,

    Defendants.

**OPINION AND ORDER**

Timothy Marcus Mayberry, a prisoner without a lawyer, proceeds in this case against Aramark Supervisor Nate Pulley, Deputy Warden George Payne, William Hyatte, Christina Reagle, Robert Carter, Jr., and Aramark Corporation for violating his Eighth Amendment rights by providing him with spoiled and rotten food at the Miami Correctional Facility from November 2021 to April 2022. ECF No. No. 31. This matter is now before the Court on the Defendants' Motion for Summary Judgment [ECF No. 47], which argues that Mayberry did not exhaust his administrative remedies with respect to his claims. For the reasons set forth below, the Court denies the motion.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016)

(citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

## MATERIAL FACTS

In an affidavit, Michael Gapski, grievance specialist at the Miami Correctional Facility, attests that a grievance process is available to inmates. ECF No. 47-1 at 1–2. The policy sets forth a three-step grievance process. *Id.* at 2–5. First, an inmate must file a formal grievance with the grievance specialist. *Id.* at 3–4. Inmates must submit formal grievances within ten business days of the incident at issue. *Id.* If an inmate is dissatisfied with the grievance specialist's determination on a formal grievance, he may file an appeal with the warden or his designee. *Id.* at 4–5. Finally, if an inmate is dissatisfied with the warden's determination, he may file an appeal with the department grievance manager. *Id.*

> The grievance policy sets forth a separate expedited process for emergency grievances:
>
> An offender may submit an emergency grievance to the nearest staff member, who shall immediately submit the grievance to the Offender Grievance Specialist. The Offender Grievance Specialist shall immediately bring an emergency grievance to the attention of the Warden / designee for review and response within one (1) business day of recording the emergency grievance. The action on any emergency grievance may be appealed by the offender within one (1) business day of receiving

2

>   the response. Upon the receipt of the appeal, the Offender Grievance Specialist shall notify, via email, the Department Offender Grievance Manager that the appeal has been submitted. The Department Offender Grievance Manager shall issue a final Department decision within five (5) business days of the offender filing the grievance.

ECF No. 47-2 at 5.

According to Michael Gapski, grievance records, including rejected grievances, are electronically stored and maintained by the Indiana Department of Correction in the regular course of business. ECF No. 47-1 at 2. Search of the electronic databases revealed that Mayberry had submitted fourteen grievances between November 2021 and April 2022. *Id.* at 6–12.[1] However, these searches revealed no indication that Mayberry had ever submitted grievances pertaining to food quality. *Id.* Though Mayberry had submitted grievances relating to the timing of food service, he did not pursue an administrative appeal on these grievances. *Id.*

In response to the Defendants' summary judgment motion, Mayberry attests that he submitted emergency grievances relating to food quality on normal grievance forms, writing "EMERGENCY I AM NOT RECEIVING ADEQUATE OR SAFE FOOD" at the top. ECF No. 70 at 8. Specifically, on November 27, 2021, he submitted an emergency grievance to the floor officer, who told him that he would turn it in at the end of his shift. *Id.* On December 20, 2021, he submitted an emergency grievance to Case Manager Isaac, who placed it into his outgoing mail container and told him that he would deliver it to the grievance office at the end of the workday. *Id.* at 8–9. On the same day, he also submitted a request form to Case Manager Isaac. *Id.* at 9. Mayberry has attached this request form as an exhibit, and it reads as follows:

>   Will you please contact the grievance specialist about the food? My food is constantly spoiled and rotten and moldy, all I been eating is cereal at breakfast. I filed grievances and emergency grievances about the food being unsafe but no one is responding; medical neither.

---

[1] Records associated with these fourteen grievances are filed as exhibits at ECF No. 47-3 through ECF No. 47-17.

3

ECF No. 68-1 at 5. In the portion of the form designated for staff responses, it states, "I sent an email but have not received a response." *Id.* The response is undated and, while signed, the signature is illegible. *Id.* Mayberry further attests that, on February 11, 2022, he submitted another emergency grievance regarding food quality. ECF No. 70 at 9. He attests that he never received any responses to the three emergency grievances relating to food quality. *Id.*

In reply, the defendants produced a second affidavit from Michael Gapski in which he attests that an exhaustive search of physical and electronic records revealed that Mayberry had unsuccessfully attempted to appeal his grievances relating to the timing of food service. ECF No. 83-1; ECF No. 83-2. However, Gapski did not locate the emergency grievances described by Mayberry or any corresponding documentation. ECF No. 83-1 at 4–5. He also searched his email records "from in and around December 2021" and could not find any email relating to Mayberry's grievances on food quality. *Id.* at 5.

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citations omitted).

4

To start, the evidence indicating Mayberry submitted three emergency grievances relating to food quality without receiving any response is sufficient to overcome summary judgment. The Court further finds the evidence that Mayberry submitted these emergency grievances is undisputed.

In the initial briefing, the Defendants provided substantial evidence describing how grievances submitted through the normal grievance process are handled and maintained and indicating that a search revealed no relevant grievances. The regular maintenance of grievance records and the inability to locate a relevant grievance within them may be sufficient to dispute an inmate's bare attestation that he or she has submitted a grievance. However, here, Mayberry responded by providing specific attestations that he submitted three emergency grievances with partial corroboration of the December 2021 emergency grievance.[2] In reply, the Defendants provided evidence indicating that the emergency grievances could not be located but did not provide any evidence describing how the facility grievance office handles or records emergency grievances.

Review of the grievance records submitted by the Defendants also sheds no light on how emergency grievances are handled or how such records are maintained. None of the submitted grievance records consist of or refer to emergency grievances. Additionally, the response times to Mayberry's normal grievances, often more than a month, suggest that Grievance Specialist Gapski would be required to deviate from his usual routine in order to meet the expedited response times set forth in the departmental grievance policy. At base, the record contains no explanation of how the facility grievance office handles emergency grievances or maintains emergency grievance records. On this record, a factfinder could not reasonably discredit

---

[2] At minimum, the request for interview form, dated December 20, 2021, suggests that Mayberry spoke to a staff member regarding emergency grievances on food quality in December 2021.

Mayberry's evidence that he submitted emergency grievances merely because the grievance office had no record of it.

In sum, Mayberry has shown that the grievance process was unavailable to him by providing undisputed evidence that he submitted three emergency grievances on food quality and that he did not receive any responses. As detailed above, the evidence submitted by the Defendants is insufficient to dispute Mayberry's showing. Therefore, the Defendants have not carried their burden to show that Mayberry did not exhaust his available remedies before filing this lawsuit, and the motion for summary judgment is denied.

Mayberry also filed a motion for sanctions against the Defendants for filing a reply brief in support of their motion for summary judgment. ECF No. 86. He contends that the reply brief was frivolous in light of the evidence submitted with his response brief. The Court retains the "inherent power to sanction a party who has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (cleaned up). To impose sanctions under its inherent authority, a "court must first make a finding of bad faith, designed to obstruct the judicial process, or a violation of a court order." *Fuery v. City of Chicago*, 900 F.3d 450, 463–64 (7th Cir. 2018).

To Mayberry's point, it is possible that the Defendants recognized they were unlikely to prevail on summary judgment when they filed the reply brief. That said, the Defendants' reply brief served at least two other valid purposes. First, the reply served to correct the Defendants' prior representations regarding Mayberry's efforts to appeal the grievances relating to the timing of food service. Such self-correcting conduct should be encouraged rather than characterized as bad faith.

Second, the arguments relating to emergency grievances functionally served as an attempt to dispute the evidence submitted by Mayberry, which would have allowed the Defendants to proceed to an evidentiary hearing on the exhaustion issue. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Mayberry relies on *Littler v. Martinez*, No. 2:16-CV-472, 2020 WL 42776, at *3 (S.D. Ind. Jan. 3, 2020), for the proposition that summary judgment replies that do not confront the evidence submitted by a pro se prisoner are inappropriate. However, the Defendants here clearly and directly confronted the evidence submitted by Mayberry with non-frivolous arguments. While the Defendants lost on this point, they did so in an entirely unremarkable manner with no suggestion of bad faith. Therefore, the motion for sanctions is denied.

For these reasons, the Court hereby:

(1) DENIES the Motion for Summary Judgment [ECF No. 47]; and

(2) DENIES the Motion for Sanctions [ECF No. 86].

SO ORDERED on January 14, 2025.

        s/ Theresa L. Springmann
        JUDGE THERESA L. SPRINGMANN
        UNITED STATES DISTRICT COURT